Thank you, Your Honor. Matthew Summers on behalf of Mr. Recchia and may it please the court. The 4th and 14th Amendment of the Constitution guaranteed the freedom to each citizen to be freed from unreasonable searches and seizures and from deprivations of property without due process of law. Mr. Recchia's 4th and 14th Amendment rights were violated in this case when on November 3rd and November 4th eight of Mr. Recchia's healthy birds were seized and prior to Mr. Recchia receiving a hearing of any kind. We therefore request that this court reverse the district court's grant of summary judgment and allow this case to proceed to trial. Critically important for this case is that this case was not decided at a trial. It was not decided by a jury of Mr. Recchia's peers. Rather it was disposed of at summary judgment. The critical analysis under the 4th and 14th Amendment is one of reasonableness and the prior case is quote crystal clear that reasonableness is an issue for the jury and it is because of the jury's unique competence in applying the reasonable man standard that summary judgment on issues of reasonableness is generally inappropriate. It is particularly inappropriate here where not only are there genuine issues and disputes as to material fact but even on the undisputed facts a reasonable jury could find that Mr. Recchia's 4th and 14th rights were violated. The court should not allow the district court to substitute its own notions and conceptions of reasonableness for that of the jury. Further I think it's important to note the potentially far-reaching implications this case may have not just on the homeless community but on any pet owner who walks their pet on a city street. If the defense's position is adopted by the court it would allow animal control officers and city veterinarians nearly unfettered discretion to not only seize but to destroy a pet based solely on what they believe may or may not be true. But the Constitution demands more than that. The Constitution demands exigency which cannot be satisfied by speculation as to what may or may not be the case but rather must be satisfied by specific and articulable facts. Counsel on your Monell claim did you raise the city's policy of not requiring blood tests before euthanization before the district court? No your honor that claim was not raised before the district court. A Monell claim was raised but based on a different policy the policy of enforcement of section 597.1. All right well can we consider that claim on appeal given that it wasn't raised below? Yes your honor I believe the district or excuse me this court does have discretion to reveal arguments not made at the lower courts to prevent a manifest injustice for instance which we believe there would be one here. The defendants are arguing that essentially because Mr. Retchie had failed to add Dr. Feldman the veterinarian as a defendant nearly all of his constitutional rights have been forfeited and that is an unfortunate situation that simply cannot be the case and. Did he file pro se below? He did your honor. So it was a pro se complaint that the district court adjudicated? That's correct your honor it was a pro se complaint that as this court knows the district court is required to read pro se papers liberally and also in this case we believe it would have been improper for the district court to instruct Mr. Retchie and not to read between the lines of summary judgment papers but to directly add Dr. Feldman the veterinarian as a defendant. Did your client below even know who Dr. Feldman was? Mr. Retchie below believed that the two animal control officers were the two ones who euthanized the birds. He did not know that a city veterinarian was the individual who euthanized the birds. He didn't know how the process worked within the animal services department? That's correct your honor. Did he have any discovery before the summary judgment? He didn't produce any discovery no the city produced several declarations both from Mr. Feldman, Dr. Feldman as well as the animal control officers. Beginning with the 14th amendment the benchmark of the 14th amendment is the meaningful time and in a meaningful manner. Mr. Retchie in this case received neither. The post-seizure post-destruction hearing that Mr. Retchie did receive which occurred four days after the destruction of the birds could certainly not have been could not be considered a meaningful time because the full penalty the destruction of his birds had already occurred and further it could not have occurred in a meaningful manner because there is certain there's no remedy under which Mr. Retchie could receive. The most that the administrative hearing could provide him is the lack of having to pay administrative fees for caring for and destroying his birds and when a person receives neither a pre-deprivation nor a post-deprivation hearing which we argue is the case here there is no reading of Matthews v. Eldridge under which such a hearing within five days? He was giving a post-seizure hearing notice at the time his birds were seized by officer Wheatley which basically states that he can apply for a hearing within a specified number of days. He applied for the hearing I believe on November 7th the birds were seized on November 3rd. Okay and they were euthanized two days afterwards? The day after your honor on November 3rd their seizure is important and as you just alluded to Judge Wardlaw November 3rd their seized and on November 4th they're destroyed I mean there's almost no chance whatsoever for any person under that scenario to receive a pre-destruction hearing which is required. The case law is numerous that before a property interest is finally deprived the person has to have an opportunity to be heard an opportunity that is nearly impossible with such a situation where if something is seized in the morning they can be euthanized that very same day and this was in the case of Siebert v. Severino out of the Seventh Circuit they noted that the risk of erroneous deprivation was extremely high when there was a five-day holding period where the owner could come and contest the validity of the seizure before he lost his property rights. Here we don't have a five-day holding period we have a 24-hour essentially holding period and the statute provides virtually no limit at all to what the veterinarian or how quickly the veterinarian can ultimately destroy the birds. And just a note about the veterinarian's expertise and ability to unilaterally make a decision in this case on birds the defendants in this case have cited the case of Parham v. J.R. to support their contention that the trained analysis of one veterinarian can suffice to satisfy due process in this case. Parham v. J.R. actually hurts their cause instead of helping it. In Parham the court made a big note about how the medical procedures in that case which involved multiple trained physicians giving multiple examinations of a satisfied due process it compared that with a situation what it called arbitrary which is when a single visit physician has unbridled discretion to determine whether or not a property interest will be deprived. That is this case the city veterinarian has unbridled discretion based only on what he believes may or may not be the case to destroy the birds. And I see that I actually have one minute 40 seconds left I'd like to reserve the rest of my time for rebuttal. All right that's fine. Thank you. Good morning Deputy City Attorney Matthew Sherb on behalf of the City of Los Angeles and the two animal control officers. May it please the court I'd like to just start where opposing counsel left off which is with the Parham case I just want to highlight that that case and the Cassium case and several of others that we cited do in fact involve the opinion of one medical examiner making an initial decision and having that be the sufficient process that is due. But I wanted to back up now and and just reiterate this is not a case about the City of Los Angeles's animal control officers going out and seeking opportunities to seize and then evaluate and euthanize animals. This is a case where as the pictures initially demonstrate there are some pigeons in really diseased and suffering conditions. In conditions that if you look at the photos it's just undisputable these animals are suffering and animal control officers went out evaluated the situation. Why was it impractical for the officers to get a warrant? I mean can't you get warrants by telephone these days and get and go before a magistrate to get a warrant before you confiscated his property? Well in this situation you have the animal control officer weekly he shows up at the scene. The animals are diseased. He can't leave them on the street. He can't leave them to infect other birds in public to possibly infect other humans. But why couldn't he get a warrant before he seized them? I don't know what it would take for him to acquire a warrant in that situation. But the situation that was there was one that required his immediate action. And certainly he could act have at least it was at least debatable for him to have seized these animals which is why qualified immunity I think so clearly applies here. He's trying to respond to a situation the animals are sick. That is later confirmed by a human officer by the veterinarian that examines them. Later a magistrate judge and then a district court judge also agree that the situation here was handled reasonably. And I think that there's at the very least qualified immunity here but I think moreover there is not a violation of the Fourth Amendment rights or the violation of a due process right. Because the parties agreed that he had a property interest in the birds right? The city has not did not move below for summary judgment on the issue of whether there was a property interest in the pigeon. These are in fact wild birds. California does have a policy that gives wildlife to the public at large and does not allow the vesting of rights in individuals. Were they all wild birds? They were as far as the record discloses these were wild pigeons that Mr. Recchia decided to take care of. If the court were to find a property interest here I think it would be something that would be somewhat novel. If the court would like additional briefing on that we could certainly provide that. Would you not brief how California law treats the crow, the seagull and the pigeons? The crow and the seagull are unquestionably California wildlife. I don't think there's been any dispute that they are by the Fish and Game Code illegal to possess. Essentially they're contraband and so there's never been a contention by either side that there's a property right in those birds. And I don't think there's any contention that what the city did with respect to those two animals was unconstitutional. So I think the focus is on the pigeons. So I do think So do we have the law on the pigeons? The law that we have is what Officer Weakley testifies to in his summary judgment declaration, which is that there are some permitting requirements. It's quite clear based on what we have that there is at least a restricted right in pigeon possession that certainly the city of Los Angeles regulates it to some degree. But we did not brief the issue of whether under California law, the Fish and Game Code, these are in fact wild birds that may have no property right at all and whether there might be a diminished property right in the fact that these are wild pigeons as opposed to some other type of animal. So moving along from that, again, qualify to mean Well, doesn't the fact that the animal officers, I mean the animal control officers asked Mr. Rechia whether he could house them elsewhere prove that they had time to get a warrant? I don't think so, Your Honor. And there's two things I want to emphasize there. One is that the standard for reasonableness under the Fourth Amendment is objective. So we really shouldn't be looking inside the head of Mr. Weakley. And the second Well, they objectively made the inquiry, which meant that at least they thought that it would be he could move the birds. I think the way that you can look at this here is that Mr. Weakley was looking for ways of handling the situation short of total seizure and was inquiring and it was Mr. Weakley's idea. So Mr. Weakley says to Mr. Rechia, you know, is there something we can do here? Do you have some other plan? And unfortunately, no plan could be fashioned because of L.A.'s requirements that pigeons reside when unpermitted at a certain distance from other residences. And so there couldn't go on a wild goose chase. Mr. Rechia had already concealed these pigeons from these animal control officers and they were in a fluid situation. And they made the analysis that there wasn't a viable option here and that because there was no place off the street, out of public for these pigeons to go, that was – it heightened the health risk. If we look at Mr. Weakley's declaration, ER 107 to 109, he's talking about those things there and those are the factors that contributed to the decision. Look, I tried to find some other way out of this, but it wasn't possible here for these birds to go and there's a risk. And he wasn't the veterinary. And he could only see what he saw. He was a trained animal control officer, but he was worried for the health of the birds and the health of the public and did a very reasonable thing. Let me ask on that subject another question. The officers told Mr. Rechia that he could ask for a post-seizure hearing, but when he arrived, he found out that the birds had been destroyed the day after. Why wasn't he entitled to a hearing before the birds were destroyed? He was not entitled – so he was given notice of the post-seizure hearing, which did in fact take place, and the hearing determined that the seizure by the two animal control officers was reasonable. He was not entitled to a pre-destruction hearing because of the analysis that the veterinarian did. The veterinarian wrote a lengthy report, which was produced and is a part of the discovery in this case. It was also mentioned during the hearing. I think it was ER 42, although I don't have my binder with me right here, where this report of the veterinarian was produced to Mr. Rechia during the hearing process. And there's no contrary medical evidence. This is the only expert opinion we have. The veterinarian looks at all of these birds, the eight that are manifesting severe symptoms of disease, tumors, lesions, and you've seen the pictures. And then he reaches his expert conclusion that because of the feces and the bodily fluids that are spreading amongst these birds, it is very likely, in his words, that all of these birds are infected and need to be destroyed, and there's nothing – there is no other humane option. And the veterinarian concluded with his 35 years of experience that this is what had to be done in this case. It's unfortunate that we couldn't provide a hearing in this situation, but there is no contrary evidence to support another position. So on summary judgment, the district court looked at the veterinarian's report and his declaration, and that's where we're at. But if Mr. Rechia even wanted to hire a doctor himself, he had no opportunity to do so, since they were destroyed the very next day. And I – But no notice to him. I appreciate that, Your Honor. What's here is from a due process perspective. First of all, let me step back really quickly and just say, and I will answer your question, but I want to say with respect to this due process claim, we're talking about actions of the municipality, because the veterinarian hasn't been sued. So if – there's no claim that the city has a policy here of – that's related to anything except for the blood testing. And that, of course, the city argues has been forfeited. But even so, the veterinarian here needed to be able to evaluate the situation under Parhan, under Kassim, these cases that deal with a situation where error is not high – highly likely, because we're involving a veterinarian or medical professional. This was the process that was due. Either that evaluation was the hearing, or a hearing was excused because of the great public need as under United Pet Supply for protecting animal health, or because this is a situation where we can rely on a trained professional who has, in this case, 35 years of experience. Counsel, I've got one short question for you. Yes, Judge. If I may, are there Supreme Court cases or Ninth Circuit cases that deal with the Fourth Amendment standards when health care workers encounter animals they think are diseased? Like as to whether a warrant is required or not. There used to be like administrative search cases that didn't require a warrant in that type of context. But I don't know what our current law says on that. Yes, Your Honor. I'm aware of Supreme Court and Ninth Circuit precedent that deal with the situation of public health exigencies. We have the United Supply case out of the Sixth Circuit that deals with the very specific situation we have here. There's the Siebert case, which my opposing counsel talked about out of the Seventh Circuit, but that case did not deal with public health exigencies, and in fact dealt with a lying volunteer animal control officer who fabricated false conditions, and so it doesn't provide the basis for a clearly established law for qualified immunity or informed the analysis here. But I'm not aware of a Ninth Circuit case that specifically deals with animal disease and the need for expeditious resolution. And I see that my time has elapsed. Thank you, Your Honors. Thank you, counsel. Just a few quick words in response to my opposing counsel, Your Honor. First, I think, Judge Wardlaw, you made note of the conditions of the birds and the fact that, you know, why wasn't there time to get a hearing or to get a warrant? And the fact is there was time. There is time here, especially with regards to the eight healthy pigeons that Mr. Rechia had in his possession. Assuming that the officers could seize the other birds who were visibly injured, visibly sick, potentially exposed to illness or disease, once that exigency was removed from the situation, once those birds had been seized and placed under the care of a veterinarian, no further exigency existed. The eight healthy birds were just eight healthy pigeons on the streets of Los Angeles, one of, I'm sure, millions who are out there as we speak. Further, Mr. Sherb noted that the confirmation, both of the hearing officer, the district court, as well as the veterinarian, justifies the actions of Officer Weakley and Rodriguez in seizing the birds. But the analysis under the Fourth and Fourteenth Amendment of what the officers knew is only that. It's that what they knew at the time. You cannot use post-fact reasonableness assessments by a magistrate judge or by a judge to supplant their own judgment at the time of the seizure. And finally, Judge Collins, you noted that this is not a battle of the experts here. There are no other vets that can come in and testify as to what the birds had or did not have because the birds were destroyed the day after they were seized. And the veterinarian's report, and I'm out of time and I'll just finish this one quick point, is contradictory at worst and inconsistent at best as to the state of these birds. All he knew is that they looked visibly healthy and may have been diseased. Thank you. Thank you. I want to thank counsel for an excellent argument and thank Mr. Summers and Kirkland and Ellis for appearing pro bono in this case. Thank you, Your Honor. Thank you. Thank you. Thank you.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. All right. Arrechia v. L.A. Department of Animal Services is submitted.
judges: Wardlaw, Gould, Collins